STEVE BURNSIDE,

                Plaintiff,

                                        Case No. 26-cv-382-pp

      v.

THE CREDIT REPAIR SHOP
and STEVEN A. WILLIAMS,

                Defendants.

## ORDER GRANTING PLAINTIFF'S MOTION TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), DENYING AS MOOT MOTION TO EXPEDITE REVIEW OF MOTION TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 4), SCREENING COMPLAINT AND DISMISSING CASE FOR LACK OF JURISDICTION

On March 10, 2026, the plaintiff—who is representing himself—filed a complaint, dkt. no. 1, a request to proceed without prepaying the filing fee, dkt. no. 2, and a motion to expedite the court's review of his request to proceed without prepaying the filing fee, dkt. no. 4. The complaint alleges that the defendants terminated the plaintiff's employment after he learned of the defendants' allegedly unlawful business practices. Dkt. No. 1 at 2. The plaintiff also has filed an "emergency motion for temporary restraining order and preliminary injunction." Dkt. No. 8.[1]

The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee. But because the complaint fails to state any claims involving federal law or the federal Constitution, and because the court does

---

[1] Because the court concludes that it does not have subject-matter jurisdiction, it cannot rule on the plaintiff's motion for injunctive relief.

not have diversity jurisdiction, the court must dismiss the case for lack of subject-matter jurisdiction.

## I. Motion to Proceed Without Prepaying the Filing Fee (Dkt. No. 2)

An indigent federal plaintiff "may commence a civil action without prepaying fees or paying certain expenses." Coleman v. Tollefson, 575 U.S. 532, 534 (2015). To qualify to proceed without prepaying the filing fee, a plaintiff must fully disclose his financial condition, and must do so truthfully under penalty of perjury. See 28 U.S.C. §1915(a)(1) (requiring the person seeking to proceed without prepayment to submit "an affidavit that includes a statement of all assets [they] possess[]").

The plaintiff did not use this court's standard form to prepare his motion to proceed without prepaying filing fee, but the document he provided contains enough information for the court to rule on his request. The plaintiff states that he is unemployed and has no income. Dkt. No. 2 at 1. He states that he has $100 in cash on hand and owns no assets other than his vehicle. Id. The plaintiff states that he has monthly expenses of about $1,044, including rent, food, transportation, phone and internet. Id. at 2.

The court finds that the plaintiff does not have the ability to prepay the filing fee and will grant his motion for leave to proceed without doing so. The court advises the plaintiff, however, that he still is responsible for paying the filing fee over time. Robbins v. Switzer, 104 F.3d 895, 898 (7th Cir. 1997). When a court grants a motion allowing a plaintiff to proceed without prepaying the filing fee, it means only that the person does not have to pre-pay the full filing fee up front; the plaintiff still owes the filing fee. See Rosas v. Roman Catholic Archdiocese of Chi., 748 F. App'x 64, 65 (7th Cir. 2019) ("Under 28 U.S.C. § 1915(a), a district court may allow a litigant to proceed 'without

*prepayment* of fees,' but not without ever paying fees.") (emphasis in original)). The plaintiff must pay the filing fee over time, as he is able.

Because the court has ruled on the plaintiff's motion for leave to proceed without prepaying the filing fee, it will deny as moot his motion to expedite review of that request.

## II. Screening the Complaint

### A. Legal Standard

The court next must "screen" the complaint to decide whether the plaintiff has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). A document filed by a self-represented litigant must be "liberally construed[.]" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citation and internal quotation marks omitted). Similarly, a complaint filed by a self-represented litigant, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Id.

Even though courts liberally construe their filings, self-represented litigants still must comply with Federal Rule of Civil Procedure 8(a)(2), which requires a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To state a claim against the defendants, the complaint must contain allegations that "'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Legal conclusions and

3

conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth. Id. at 663–64.

B.    The Complaint

Along with the complaint itself, dkt. no. 1, the plaintiff filed several documents that contain differing allegations, see dkt. nos. 1-1, 1-2, 1-3. The primary pleading, titled "Complaint and Demand for Jury Trial," alleges that the plaintiff worked for The Credit Repair Shop and its owner, Steven Williams, to provide credit repair services to customers. Dkt. No. 1 at 2. It alleges that from at least 2020 to 2024, the defendants "accepted upfront payments from consumers for credit repair services before services were completed," which the plaintiff believes is in violation of federal law. Id. The complaint alleges that the defendants terminated the plaintiff's employment on February 20, 2026 because he had learned that the defendants were acting unlawfully. Id. It asserts that the plaintiff applied for unemployment benefits, but that the defendants "knowingly submitted false information" about his termination date, which interfered with his unemployment benefits. Id. The plaintiff asserts four claims for relief: (1) violation of the Credit Repair Organizations Act (CROA) (15 U.S.C. §1679), (2) retaliatory termination, (3) false statements/defamation and (4) civil RICO (18 U.S.C. §1962). Id.

In a separate document titled "RICO Enterprise and Pattern of Racketeering Allegations," the plaintiff makes allegations that he says "further support Count IV of Plaintiff's Complaint." Dkt. No. 1-1. The plaintiff alleges that the RICO enterprise consists of the defendants—The Credit Repair Shop and its owner, Steven Williams. Id. at 1. He alleges that Williams directed and controlled the operations of the enterprise, which functioned to collect advance payments from customers for credit repair services. Id. He alleges that the

4

collection of payments from customers affected interstate commerce because it involved electronic payments and communications across state lines. Id. The plaintiff asserts that he was injured by the enterprise in retaliation for learning about their unlawful business practices. Id. at 2.

The plaintiff filed a third document titled "Rule 9(b) Fraud Allegations Supporting Civil RICO Claim," which he asserts contains "specific allegations of fraud to satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b)." Dkt. No. 1-2. The plaintiff alleges that the defendants and their employees engaged in fraud by charging customers upfront payments for credit repair services, which he asserts is unlawful. Id. at 1. The plaintiff alleges that this conduct occurred between 2020 and 2024, and that he has commission statements reflecting the payments collected during that time. Id. The plaintiff asserts that the repeated pattern of unlawful activity "support[s] a civil RICO claim." Id. at 2. He alleges that he was injured because he was terminated after learning of the defendants' unlawful practices and that the defendants interfered with his ability to obtain unemployment benefits. Id.

Finally, the plaintiff filed a fourth document titled "Whistleblower Retaliation Allegations" that purportedly "supplements Plaintiff's federal complaint and explains the basis for Plaintiff's retaliation claim arising from his refusal to participate in unlawful credit repair practices." Dkt. No. 1-3. In this attachment, the plaintiff states he informed defendant Williams that he believed accepting advance payments violated the CROA and that he refused to participate further in what he believed was unlawful conduct. Id. at 1. The plaintiff states that shortly after this, he was reassigned and later terminated. Id.

5

C.    <u>Analysis</u>

The plaintiff is attempting to bring a claim under the Credit Repair Organizations Act, 15 U.S.C. §1679. He alleges that the defendants violated that statute by charging customers "upfront fees" for credit repair services.

The CROA states that "[n]o credit repair organization may charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed." 15 U.S.C. §1679b(b). A credit repair organization that violates this provision may be sued in a civil action. 15 U.S.C. §1679g. But only the *affected person* may sue the credit repair organization in court. <u>See</u> 15 U.S.C. §1679g(a) (stating that "[a]ny person who fails to comply. . . with respect to any other person shall be liable *to such person. . .*" (emphasis added)); <u>see also</u> <u>Warth v. Seldin</u>, 422 U.S. 490, 499 (1975) (stating that a party "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."). The plaintiff does not allege that he personally paid the defendant upfront fees for credit repair services. He alleges only that the defendant charged *others* those fees. The plaintiff has no standing—no legally protectable personal interest—to sue the defendant for a CROA violation that he did not experience. The court must dismiss the plaintiff's CROA claim.

The plaintiff's second claim is for "retaliatory termination." He asserts that the defendants terminated him to prevent him from exposing the defendants' alleged violations of the CROA. The plaintiff does not identify the law under which he brings this claim. Wisconsin has a whistleblower protection statute, Wis. Stat. §230.90, but that statute "prohibits state employers from disciplining public employees for disclosing certain

6

information." <u>Kinzel v. Bd. of Regents of the Univ. of Wis. Sys.</u>, 347 Wis. 2d 550 (Table), 2013 WL 1234977, *4 (Wis. Ct. App. 2013). The plaintiff worked for a private credit repair organization, not a state employer, so this statute does not apply. There are federal whistleblower protection laws such as the Sarbanes–Oxley Act, 18 U.S.C. §1514A(a), and the Dodd–Frank Act, 15 U.S.C. §78u–6, but these statutes apply to whistleblowers who work for publicly traded companies and report violations of federal securities laws. <u>See</u> <u>Verfuerth v. Orion Energy Sys., Inc.</u>, 879 F.3d 789, 792–93 (7th Cir. 2018). There is no basis for the court to conclude that the defendant was a publicly traded company, and the CROA is not a federal securities law. The court is not aware of any whistleblower statute that would apply to the plaintiff's case.

The plaintiff may be trying to assert a claim for wrongful termination in violation of public policy. Under Wisconsin law, employers can fire an employee "for good cause, for no cause, or even for cause morally wrong, without being thereby guilty of legal wrong." <u>Tatge v. Chambers & Owen, Inc.</u>, 219 Wis. 2d 99, 112–13 (Wis. 1998) (citations omitted). A narrow exception exists if the employee was fired "for fulfilling, or refusing to violate, a fundamental, well-defined public policy or an affirmative legal obligation established by existing law." <u>Bammert v. Don's Super Valu</u>, 254 Wis. 2d 347, 350–51 (Wis. 2002). "Plaintiffs seeking relief under this narrow exception must: (1) first identify a fundamental and well defined public policy in their complaint sufficient to trigger the exception to the employment-at-will doctrine; and (2) then demonstrate that the discharge violated that fundamental and well defined public policy." <u>Strozinsky v. Sch. Dist. of Brown Deer</u>, 237 Wis. 2d 19, 40 (Wis. 2000) (citations omitted). In <u>Strozinsky</u>, the plaintiff alleged that her employer had terminated her after she refused to falsify records to federal tax

7

authorities. Id. at 48. The Wisconsin Supreme Court held that the employee had identified a fundamental and well-defined public policy in favor of providing accurate tax information to the federal government. Id. at 54. Here, the plaintiff alleges that he refused to participate in actions that he believed violated a federal statute and that he subsequently was terminated. That is sufficient at this stage to state a state-law claim for wrongful termination in violation of public policy.

The plaintiff's third claim is for "false statements/defamation." He alleges that the defendants interfered with his application for unemployment benefits by stating that he worked the week ending February 28, 2026, when he was terminated on February 20, 2026. Under Wisconsin law, to state a claim for defamation, "a plaintiff must allege that the defamatory statement: '[1] was spoken to someone other than the person defamed, [2] is false, [3] is unprivileged and [4] tends to harm the defamed person's reputation so as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.'" Wesbrook v. Ulrich, 90 F. Supp. 3d 803 (W.D. Wis. 2015) (quoting Torgerson v. Journal Sentinel, Inc., 210 Wis. 2d 524, 534 (Wis. 1997) (alteration in original)). Accepting the plaintiff's allegations as true, the defendants communicated incorrect information to the unemployment insurance division about when the plaintiff last worked. But the complaint does not establish that this statement harmed the plaintiff's reputation. At most, the statement interfered with his ability to qualify for unemployment insurance benefits.

Wisconsin law provides that making false statements in connection with unemployment insurance benefits applications is unlawful. Wis. Stat. §108.24(2) states that "any person who knowingly makes a false statement or

8

representation in connection with any report or as to any information duly required by the department under this chapter" is subject to a fine or imprisonment. That is a criminal penalty. A private plaintiff cannot bring a case to enforce this provision or recover damages. See Saleem v. Helman, 124 F.3d 205 (Table), 1997 WL 527769, at *2 (7th Cir. Aug. 21, 1997)) ("[P]rivate persons generally have no right to enforce criminal statutes or to sue under them unless the statute also creates a private right of action."). The court must dismiss the plaintiff's claim for "defamation" or false statements made in connection with his unemployment insurance benefits application.

The plaintiff's final claim is for civil RICO. To state a RICO claim under §1962(c), a plaintiff must allege (1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity. Slaney v. The Int'l Amateur Athletic Fed'n, 244 F.3d 580, 597 (7th Cir. 2001). The plaintiff's allegations fail to establish that the defendants are engaged in racketeering activity. Not just any criminal or fraudulent activity qualifies as "racketeering activity;" "racketeering activity" is limited to acts that are chargeable under certain state law felony classifications or indictable under specific federal criminal provisions enumerated in the RICO statute. See 18 U.S.C. §1961(1) (defining "racketeering activity"). This list is exclusive. Holland v. Cerberus Cap. Mgmt., No. 13-CV-00491, 2014 WL 6473479, at *6 (N.D. Ind. Nov. 18, 2014), aff'd (Mar. 9, 2015), aff'd (Apr. 20, 2015); see also McDonald v. Schencker, 18 F.3d 491, 495 (7th Cir. 1994) (affirming dismissal of RICO claim where plaintiff failed to plead a racketeering activity under Section 1961(1)). Violations of the CROA do not qualify as "racketeering activity" under the RICO statute. Because the plaintiff has not pled that the defendants engaged in racketeering activity, the court must dismiss the plaintiff's RICO claim.

## III. Jurisdiction

The court is dismissing all but Count II of the plaintiff's complaint for failure to state a claim for relief. Count II is a claim for wrongful termination brought under Wisconsin law—state law. The court must consider whether it has jurisdiction to hear this remaining claim.

Federal courts are courts of limited jurisdiction. They have the authority to consider and decide lawsuits between citizens of different states if the amount in controversy is more than $75,000—this is called "diversity jurisdiction." 28 U.S.C. §1332. They also have the authority to consider and decide cases that involve violations of federal law or the federal Constitution— this is called "federal question" jurisdiction. 28 U.S.C. §1331. Federal courts cannot consider and decide lawsuits alleging violations of state law unless the plaintiff lives in a different state from every defendant (and the amount of claimed damages exceeds $75,000), or unless the state-law claims relate to a federal claim.

Because the court is dismissing all the plaintiff's federal law claims, the court has jurisdiction to hear this case only if there is diversity jurisdiction. In the complaint, the plaintiff alleges that he is a resident of Wisconsin and that The Credit Repair Shop is a business operating in Milwaukee, Wisconsin. That means at least one of the two defendants[2] is a resident of the same state as the plaintiff. Diversity jurisdiction requires "complete diversity," meaning that the plaintiff must live in a state different from the state of residence of all the defendants. Lincoln Property Co. v. Roche, 546 U.S. 81, 89 (2005). Because

---

[2] The complaint does not identify the state of residence of defendant Steven A. Williams.

there is not complete diversity between the plaintiff and the defendants, the court lacks diversity jurisdiction and must dismiss the case.

## IV.     Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **DENIES AS MOOT** the plaintiff's motion to expedite review of his motion for leave to proceed without prepaying the filing fee. Dkt. No. 4.

The court **DECLINES** to rule on the plaintiff's emergency motion for temporary restraining order and preliminary injunction. Dkt. No. 8.

The court **ORDERS** that that this case is **DISMISSED** for lack of subject-matter jurisdiction. The clerk will enter judgment accordingly.

Dated in Milwaukee, Wisconsin this 21st day of April, 2026.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**

11